# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | |
|---|---|
| SHENOUDA S. ABDEL-MALAK, *et al.*, | |
| Plaintiffs, | |
| v. | Action No. 08:10–CV–2051—AW |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Plaintiffs' Shenouda and Shahla Abdel-Malak's Motion for Leave to File an Amended Complaint. (Doc. No. 32). Also pending before the Court is Defendant JP Morgan Chase Bank's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 54). The parties have fully briefed the pending motions, and the Court deems that no hearing is necessary. For the reasons stated herein, Plaintiff's Motion for Leave to Amend is **GRANTED**, and Defendant's Motion to Dismiss is **GRANTED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs in this case, Shenouda S. Abdel-Malak and Shahla Abdel-Malak (the "Plaintiffs"), are residents of Maryland. They have filed claims against the Defendant, JP Morgan Chase Bank, a corporation which is a citizen of both the states of New York and Delaware. The facts giving rise to their claim are outlined below.

In 2006, Plaintiffs constructed a home on the lot identified as 7012 Bradley Boulevard, located in Montgomery County, Maryland. Plaintiffs had previously taken out a construction loan to finance the construction cost of the residence. In November 2007, Plaintiffs secured a

mortgage from Defendant Chase, in order to replace the construction loan. This mortgage with Chase is at issue in this case.  Plaintiffs allege that when they completed the construction of their home in November 2007, they owed approximately $2.5 million on the construction loan that they had taken out prior to building their residence. Consequently, they secured a loan through Washington Mutual Bank (now JP Morgan Chase), which offered an adjustable mortgage interest rate.

Plaintiffs aver that they were given a loan repayment schedule by Washington Mutual Bank. This loan repayment schedule authorized the Plaintiffs to make a monthly payment in the amount of $7,455.26. (Doc. No. 32-1 at 7). This payment comprised two components—$6,621 constituted both the principle and interest on the loan, and an amount of $834.13 constituted Plaintiffs' monthly escrow payment. *Id* at 3-4.  According to Plaintiffs, the loan disclosures, notes, and riders offered by the Defendant only alerted them to the "mere possibility" of negative amortization under the above-described payment schedule.  However, Plaintiffs assert, under this payment schedule, negative amortization was certain to occur if they made the minimum payment amounts outlined in the schedule. Plaintiffs contend that the lack of disclosure as to this certain result violated the Truth in Lending Act (TILA), 12 C.F.R. §226.17 (2010), et. seq. Moreover, Plaintiffs allege that, at the time of closing, Defendant failed to provide them with sufficient notice of their right to cancel their mortgage in accordance with TILA. Supporting their claim, Plaintiffs assert that Defendants gave them only one copy of their notice of the right to rescind their mortgage as opposed to the two copies required under TILA. *Id.* at 16.  Plaintiff alleges that two copies of this notice should have been given to both Mrs. Abdel-Malak and Mr.

Abdel-Malak.  As only one copy of this notice was given, Plaintiffs allege that Defendants

violated the notice requirements under TILA. *Id.* at 5.

In connection with the closing on their mortgage, Plaintiffs received a notification

informing them of the amount that they would be required to pay in escrow each month.

Defendants alerted Plaintiffs that they would be required to pay $834.13 as a monthly escrow

payment.   *Id.* at 3.   Plaintiffs allege that Defendants based the escrow amounts featured on this

statement on the unimproved value of the land.  According to Plaintiffs, in September 2008,

Defendant Chase alerted Plaintiff to the fact that a shortage existed in Plaintiffs' escrow account

in the amount of $26,955.33. Plaintiffs recall that Defendants informed them that the taxes on the

property had increased, leading to an increase in Plaintiffs' escrow obligation. Plaintiffs state that

Defendants required them to pay the shortage amount in a lump sum and have their monthly

mortgage payment increase to $9, 701.54, or alternatively, pay a monthly mortgage payment of

$11,947.82 if the shortage amount was not paid in full.

Plaintiffs fell behind on their mortgage payments when they were alerted of the increase

in escrow payments. Plaintiffs put their home on the market in hopes of selling the home at full

value.   In addition to attempting to sell their home, Plaintiffs have also attempted to rescind their

mortgage but claim that Defendants failed to respond to their attempts.  *Id.* at 8.

Plaintiffs originally filed this case in the Circuit Court for Montgomery County,

Maryland, and Defendants removed the case to this Court on July 28, 2010.  On July 30, the

Plaintiffs filed an Emergency Motion for a Temporary Restraining Order (TRO).  The Court held

a telephonic  hearing to decide on the Motion for TRO. Subsequently, the Court issued an order

denying this Motion.  After their Emergency Motion for TRO was denied, Plaintiffs filed a

Motion for Preliminary Injunction on August 11, 2010.  The Court denied this Motion on

October 20, 2010.  Plaintiffs have filed a Motion for Leave to Amend their Complaint.  In their

Amended Complaint, Plaintiffs have alleged violations of the Maryland Consumer Protection

Act, Breach of Special Duty of Care, Negligent Misrepresentation, Violations of the Truth in

Lending Act, Unjust Enrichment, Equitable Estoppel, and Constructive Fraud.  Defendants have

filed a Motion to Dismiss Plaintiff's Complaint.

## II.      MOTION FOR LEAVE TO AMEND

Plaintiffs have filed a Motion for Leave to Amend their Complaint.  The Scheduling

Order in this case allowed the plaintiffs to amend their Complaint up until December 20, 2010.

Plaintiff timely filed their Motion for Leave to Amend on November 24, 2010. Accordingly,

Plaintiff's Motion is **GRANTED**. The Court will treat the pending Motion to Dismiss as

responding to the Amended Complaint.

## III.     STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d

231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only

satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 513 (2002), which requires a "short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In two recent cases, the United States

Supreme Court clarified the standard applicable to Rule 12(b)(6) motions.  *See Ashcroft v. Iqbal*,

129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Those cases make

clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly*, 550 U.S. at 556 n.3 (2007).   That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## IV. ANALYSIS

### a. P & A Agreement

Defendant argues that the Purchase and Assumption ("P & A Agreement") executed between the plaintiffs and Chase Bank bars all of Plaintiffs' claims. (Doc. No. 54-1, at 9). According to the defendant, the P & A agreement stipulates that Chase is not liable to the plaintiffs for any of WaMu's conduct before Chase took over WaMu.[1] Defendant directs the

---

[1] **Borrower Claims**. Notwithstanding anything to the contrary in this Agreement, *any liability associated with borrower claims for payment of or liability to any borrower* for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, *related in any way to any loan or commitment to lend made by the Failed Bank* prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are *specifically not assumed by the Assuming Bank*. (emphasis added by Defendant).

Court to cases from various jurisdictions which Defendant believes support their argument. *See Hilton v. Wash. Mut. Bank*, No. C 09-1191 SI, 2009 WL 3485953, at *3 (N.D. Cal. Oct. 28, 2009)*; see also McCann v. Quality Loan Serv. Corp.*, No. C10-181RSM, 2010 WL 3118313, at *4 (W.D. Wash. July 21, 2010); *Jones-Boyle v. Wash. Mut. Bank, FA*, No. CV 08-02142 JF (PVT), 2010 WL 2724287 (N.D. Cal. July 8, 2010). Plaintiffs respond to Defendant's assertion that the P&A agreement bars their claims by contending that the Malaks are not suing the defendant for actions taken by WaMu, but instead, the Malaks are suing the defendant for its own conduct which was taken after the P & A agreement was executed. (Doc. No. 62, at 7). However, Plaintiffs do not contest Defendant's assertion that the P & A agreement shields the defendant's liability for WaMu's conduct.

As the Defendant aptly states, several district courts from around the country have barred claims against JP Morgan Chase Bank for WaMu's conduct, pursuant to the provisions in the P&A. *See Hilton*, 2009 WL 3485953, at *3 ("[I]n light of the Purchase and Assumption Agreement, plaintiff cannot maintain any claims against JPMorgan arising out of the origination of the loans."); *see also Jones*, 2010 WL 2724287, at * 10 ("[T]he Purchase & Assumption Agreement expressly prevents Jones-Boyle from asserting claims against JP Morgan for the conduct of WaMu."); *Federici v.* Monroy, No. 09-4025, 2010 WL 1345276, *3 (N.D.Cal.) (N.D.Cal. Apr. 6, 2010) ("Because all of the claims against Cross-Defendant JPMorgan are based on WaMu's lending activities, the liability for which was explicitly *not* assumed by JPMorgan in its purchase of WaMu's assets, the FACC does not state any claims upon which relief could be granted against JPMorgan.")

(Doc. No. 54-2, at 14).

A careful reading of the facts which Plaintiffs assert in their Complaint reflect the fact that all of Plaintiffs' claims rely solely on the conduct of WaMu. Plaintiffs do make several allegations regarding the defendant's own conduct, but the Court believes that this conduct arises solely out of the original acts of WaMu. The only independent acts of misconduct in which the defendant is alleged to have engaged is the allegation that "[a]fter Defendant took ownership of the loan it sent Plaintiff a loan statement which failed to provide any notice or disclosure whatsoever of the tremendously adverse impact on the Plaintiff of paying the Minimum Payment under the negative amortization scheme." *Id.* at 50. Furthermore, Plaintiffs allege that the defendant deleted the statement which was previously provided to the plaintiff which notified them of the possibility of negative amortization. *Id.* Moreover, Plaintiffs allege that Defendant deliberately created their monthly statements to lead plaintiffs into falsely believing that they were paying off their mortgage, when in reality the mortgage principal was not being paid. (Doc. No. 62, at 10). ("Specifically, Defendant misplaced the mathematical symbol for 'negative' -- the only indicia of the mounting debt -- by placing it after the principal.").

The Court believes that even the alleged independent acts of misconduct by Chase Bank arise out of the acts of WaMu. Assuming *arguendo* that Chase failed to disclose the possibility of negative amortization after acquiring the WaMu mortgage, as noted in the Court's Memorandum Opinion on Plaintiffs' Motion for a preliminary injunction and applicable to the instant Motion, "Plaintiffs direct the Court to no Maryland legal authority requiring disclosure of negative amortization." *Abdel-Malak v. JP Morgan Chase Bank, N.A.*, 748 F. Supp. 2d 505, 510 (D. Md. 2010). Moreover, Plaintiff's allegation that Defendant intentionally misplaced the

mathematical symbol for "negative" is similarly insufficient to state a claim for relief under the Maryland Consumer Protection Act. There are no facts alleged that indicate that this symbol was intentionally misplaced in order to be deceptive or misleading. Accordingly, all of Plaintiff's allegations arising out of Defendant's post-acquisition conduct are insufficient to state a claim for relief under for any of the causes of action alleged in Plaintiff's Complaint.

## CONCLUSION

Based on the factual allegations in Plaintiff's Complaint, Plaintiff has failed to state any claim upon which relief can be granted. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss. An Order consistent with this Memorandum Opinion will follow.


|      August 29, 2011       |              /s/              |
| :------------------------: | :---------------------------: |
|            Date            |    Alexander Williams, Jr.    |
|                            |    United States District     |